IFEANYI OKEKE
and OLIVDAN PROPERTIES, LLC,

        Plaintiffs,

  v.

Case No. 25-cv-36-pp

JOSEPH NANTOMAH
and INVESTORS CAPITAL LLC,

        Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT (DKT. NO. 14) AND DIRECTING PLAINTIFFS TO FILE FEE PETITION**

On January 8, 2025, the plaintiffs filed a complaint, alleging that they had entered into an investment agreement with the defendants by which the defendants defrauded them. Dkt. No. 1. The defendants have not appeared or answered the complaint. On April 22, 2025, the clerk entered default upon the plaintiffs' request. One month later, the plaintiffs filed a motion for default judgment. Dkt. No. 14. The court will grant in part and deny in part the motion and order the plaintiffs to file a fee petition with documentation supporting their claimed costs and attorneys' fees.

**I.    Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the

1

court must assure itself that the defendant was aware of the suit and still did not respond.

The plaintiffs filed the complaint on January 8, 2025. Dkt. No. 1. The plaintiffs assert that on March 13, 2025, a process server personally served both defendants with a summons and complaint. Dkt. Nos. 5, 6. The affidavit of personal service for defendant Joseph Nantomah states that Anthony DiBrito of Paper Boy Process Service, Inc. personally served Nantomah with the summons and complaint at Room 206 of the Milwaukee County Courthouse at 9:25 a.m. on March 13, 2025. Dkt. No. 5. Personal service is a proper form of service on a natural person. See Fed. R. Civ. P. 4(e)(1) (allowing service on an individual by following state law); Wis. Stat. §801.11(1)(a) (statute defining proper service on a natural person in Wisconsin). The affidavit of corporate service for defendant Investors Capital LLC states that Anthony DiBrito of Paper Boy Process Service, Inc. personally served the summons and complaint on Joseph Nantomah as the registered agent for Investors Capital at Room 206 of the Milwaukee County Courthouse at 9:25 a.m. on March 13, 2025. Dkt. No. 6. The Wisconsin Department of Financial Institutions' website reflects that Joseph Nantomah is the registered agent for Investors Capital. See https://apps.dfi.wi.gov/apps/corpSearch/Search.aspx (search term "Investors Capital LLC"). Service on a registered agent is a proper form of service on a limited liability company. See Fed. R. Civ. P. 4(h)(1)(B) (allowing service on a registered agent).

The defendants properly were served with the summons and complaint on March 13, 2025, well within the ninety-day period dictated by Fed. R. Civ. P. 4(m). The defendants' deadline to respond to the complaint was twenty-one days after service—that is, on April 3, 2025—but neither defendant responded by that date, responded at all or requested an extension of time to do so. The clerk's entry of default was proper.

## II. Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. But "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary. Fed. R. Civ. P. 55(b). But such proceedings are unnecessary if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602

3

(quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

The plaintiffs brought seven claims: breach of contract, civil theft under Wis. Stat. §943.20, deceptive trade practices under Wis. Stat. §100.18, sale of an unregistered security under Wis. Stat. §551.301, misstatement or omission in the sale of a security under Wis. Stat. §551.501, sale of unregistered securities under §12(a)(1) of the Securities Act of 1933 and securities fraud under §11 of the Securities Act of 1933. Dkt. No. 1. The court first must determine whether, accepting all allegations as true, the complaint states a claim for each of these causes of action. If so, the court must determine whether the amount of damages is readily ascertainable from the pleadings or if a hearing is necessary.

   A.   Factual Allegations

Again, for the purposes of default judgment, the court accepts the factual allegations in the complaint as true. The plaintiffs are an individual, Ifeanyi Okeke, and a limited liability corporation, Olivdan Properties LLC, of which Okeke is the sole owner and principal. Dkt. No. 1 at ¶¶1–2. Individual defendant Joseph Nantomah solicits individuals to invest in his company, corporate defendant Investors Capital LLC, promising guaranteed returns to investors within a specific time frame through "house flipping." Id. at ¶¶4, 8. Nantomah promised plaintiff Okeke that within twelve months, Okeke would receive a $185,000 return on profits from flipping houses (purchasing, renovating and reselling houses at a profit). Id. at ¶9. Nantomah communicated

4

this promise to the plaintiff through an investment presentation where he represented that "he was a competent, trustworthy real estate investor and home flipper with a track record of success" and that the plaintiff's investment would be used to flip houses. Id. at ¶11.

On November 23, 2022, the plaintiffs and the defendants entered into a real estate investment agreement (attached as Exhibit A to the complaint). Id. at ¶10; Dkt. No. 1-3. Shortly afterward, Okeke paid the defendants $150,000 as promised in the agreement. Dkt. No. 1 at ¶12. The agreement promised a $35,000 return on the plaintiff's investment within twelve months. Id. at ¶13. The agreement stated that defendant Investors Capital LLC would "source, inspect, acquire, prospective property on behalf of the investors" and that the plaintiffs' investment would be used to flip a property located at 5722 S Martin Luther King Drive, Chicago, IL 60637. Id. at ¶15.

After entering into the agreement, Nantomah told the plaintiff and others that he could "guarantee a return on investment within a specified term for any money given to the Defendants" and that "any funds would be ear-marked for particular real estate investments that he identified as suitable 'flips' and had already been purchased." Id. at ¶14. The plaintiffs state these representations were false and that "investments to the Defendants amounted to nothing more than unsecured loans, empty promises, and a scheme to defraud persons and entities like the Plaintiffs to part with their funds which ended up being used by Mr. Nantomah to fund his personal lifestyle and other ventures." Id.

5

On March 7, 2023, the plaintiffs and defendants entered into a second investment agreement (attached as Exhibit B to the complaint). Id. at ¶16; Dkt. No. 1-4. Shortly afterward, Okeke paid the defendants $20,000 as promised in the second agreement. Dkt. No. 1 at ¶17. The second agreement promised a $27,000[1] return on the plaintiff's investment within seven months. Id. at ¶18. The second agreement stated that defendant Investors Capital LLC would "source, inspect, acquire, prospective property on behalf of the investor" and that the plaintiffs' investment would be used to flip a property located at 3536 N. 19th Street, Milwaukee WI 53206. Id. at ¶19.

The plaintiffs assert that under the two agreements, they were entitled to receive a $185,000 return by November 23, 2023 and a $27,000 return by October 7, 2023, but that the defendants failed to pay the plaintiffs any amount by those deadlines. Id. at ¶¶20–21. Okeke states that from January 2024 to the date of filing this case (January 8, 2025), he attempted to contact Nantomah for the promised return on his investment, but that Nantomah "persistently offered excuses to the Plaintiff regarding the delay" and "frequently claimed that he was in the process of coordinating with his bank to facilitate the payments;" as of the date of the complaint, the amount due to the plaintiffs still had not been paid. Id. at ¶22. The plaintiffs believe that the defendants spent their investment funds on "personal luxuries" rather than real estate investments. Id. at ¶24.

---

[1] The complaint asserts that the second contract promised a $27,000 return on investment, but the contract itself states that the return on investment would be $30,000. Dkt. No. 1-4 at 3.

6

The plaintiffs assert that they are entitled to damages of $212,000, representing the unfulfilled return on their investments, reasonable costs and attorneys' fees, interest under Wis. Stat. §551.509(2), statutory damages under Wis. Stat. §895.446(3), punitive damages under Wis. Stat. §895.043, recessionary damages under §12(a) of the Securities Act and damages under §11 of the Securities Act. Id. at 13–14.

B.  Breach of Contract

The plaintiffs assert that they entered into two contracts with the defendant Investors Capital LLC, through its member, Nantomah. Dkt. No. 1 at ¶26. They contend that the defendants breached those contracts by failing to pay the plaintiffs the promised return on investment. Id. at ¶¶27–28. Under Wisconsin law, the plaintiffs must demonstrate three elements to establish a breach of contract claim: (1) that a valid contract exists; (2) that the defendant breached the contract; and (3) that damages stemmed from that breach. Matthews v. Wis. Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (citing N.W. Motor Car, Inc. v. Pope, 187 N.W. 2d 200 (Wis. 1971)).

The complaint alleges that the plaintiffs entered into two agreements with the defendants in which the plaintiffs promised to provide funds for the defendants to invest; in exchange, the defendants promised to return a profit on the plaintiffs' investment. The plaintiffs attached the two agreements to the complaint. Technically, those agreements reflect that they were between the two corporate parties in this case—Olivdan Properties LLC and Investors Capital LLC—not the individuals. See Dkt. Nos. 1-3 at 1, 1-4 at 1 (both

7

identifying the parties as Olivdan Properties LLC and Investors Capital LLC). To the extent that the complaint asserts a breach of contract claim between the individual parties, default judgment is not appropriate because there is no evidence of a contract between Okeke and Nantomah as individuals. The complaint and the attached documents establish there were two valid contracts between Olivdan Properties LLC and Investors Capital LLC.

The court next must assess breach. The first agreement states that Investors Capital "shall give a return on investment at the profit in fix and flip within 12 Months of the above property." Dkt. No. 1-3 at 2. It states that a payment of $185,000 will be made to the investor on November 22, 2023. Id. at 3. The second agreement states that Investors Capital "shall give a return on investment at the profit in fix and flip within 7 Months of the above property." Dkt. No. 1-4 at 2. It states that a payment of $30,000 will be made to the investor on November 22, 2023. Id. at 3. The complaint alleges that Investors Capital never made any payments by the deadlines stated in the contracts. The complaint sufficiently alleges that Investors Capital breached both contracts.

Next is the issue of whether damages resulted from Investors Capital's breaches. The complaint asserts that the plaintiffs paid the defendants a total of $170,000 in exchange for the promised return on investment. By losing both that amount and the promised return on investment, plaintiff Olivdan Properties has been damaged by Investors Capital's failure to comply with the contracts. The complaint sufficiently alleges a breach of contract claim against

8

Investors Capital. The court will grant default judgment on the first cause of action in the complaint.

C.  Civil Theft

The plaintiffs brought a state law claim against the defendants for civil theft of the funds the plaintiffs invested with the defendants. Wis. Stat. §895.446 allows "any person who suffers damage or loss by reason of intentional conduct" prohibited by Wis. Stat. §943.20 to bring a cause of action against the person who caused the damage or loss. Wis. Stat. §895.446(1). Wis. Stat. §943.20(1) lists five ways in which a defendant may be held liable for civil theft: (1) intentionally taking and carrying away property without the owner's consent with the intent to permanently deprive the owner of possession; (2) bailment; (3) having a legal interest but taking the property out of the possession of someone with a superior interest with the intent to permanently deprive the superior interest holder of possession; (4) obtaining property by false representation or deceit; and (5) intentionally failing to return property possessed under a lease after the lease has expired. Wis. Stat. §943.20(1)(a)–(e). A cause of action for civil theft can coexist with a claim for breach of contract where the contract "create[s] the state of things which furnishes the occasion of a tort" so long as the contract does not create "the underlying duty for the tort." See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC, 929 F.3d 489, 496 (7th Cir. 2019) (quoting Landwehr v. Citizens Trust Co., 110 Wis. 2d 716, 722-23 (Wis. 1983)).

9

The allegations in the complaint establish the fourth basis for civil theft. The complaint alleges that the defendants falsely promised guaranteed returns from house flipping to induce the plaintiffs to invest a total of $170,000 with the defendants. The complaint alleges that "Mr. Nantomah's representations were untrue, and the investments to the Defendants amounted to nothing more than unsecured loans, empty promises, and a scheme to defraud persons and entities like the Plaintiffs to part with their funds which ended up being used by Mr. Nantomah to fund his personal lifestyle and other ventures." These allegations, taken as true, are sufficient to establish that the defendants obtained the plaintiffs' investment funds through false representation or deceit. This claim can coexist with the plaintiffs' claim for breach of contract because "[t]he duty to refrain from converting or stealing" the plaintiffs' investment was "entirely independent of the contract." Milwaukee Ctr., 929 F.3d at 497 (affirming grant of summary judgment to the plaintiff on tort claims for civil theft and conversion where defendant improperly retained the plaintiff's funds received through a contractual agreement). The complaint sufficiently alleges a civil theft claim against the defendants. The court will grant default judgment for the plaintiffs on the second cause of action in the complaint.

D. Deceptive Trade Practices

The complaint alleges that the defendants engaged in deceptive trade practices under Wis. Stat. §100.18. To state a claim under this statute, the plaintiffs must establish that "the defendant has, with the specified intent, made an 'advertisement, announcement, statement or representation . . . to the

public,' which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading,' and that the plaintiff has sustained a pecuniary loss as a result." Tietsworth v. Harley-Davidson, Inc., 270 Wis. 2d 146, 169 (Wis. 2004) (quoting Wis. Stat. §100.18(1)).

The complaint alleges that Nantomah "made numerous representations to Plaintiff Okeke and other members of the public, stating that he could guarantee a return on investment within a specified term for any money given to the Defendants." Dkt. No. 1 at ¶14. The plaintiffs allege that these representations were false and in relying on Nantomah's misrepresentations, they suffered a loss of their investment. These allegations, taken as true, are sufficient to establish a claim under the Wisconsin Deceptive Trade Practices statute. The court will grant default judgment for the plaintiffs on the third cause of action in the complaint.

    E.    State Securities Law Claims

The plaintiffs bring two claims under Wisconsin's Uniform Securities Law: sale of an unregistered security in violation of Wis. Stat. §551.301 and a misstatement or omission in the sale of a security in violation of Wis. Stat. §551.501. Under Wisconsin law, a "security" includes "[a]n investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor." Wis. Stat. §551.102(28)(d)(1). The statute defines a "common enterprise" as "an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party." Id.

11

The Wisconsin Court of Appeals has addressed the proper framework to determine if an investment contract like the one at issue here is a security subject to the state's laws. State v. Johnson, 257 Wis. 2d 736 (Wis. Ct. App. 2002). In Johnson, the defendant solicited loans for his business, representing that the funds would be doubled on repayment. Id. at 740. The court determined that the investment opportunities offered were a security subject to the state's laws because they were offered to raise capital for the defendant's business and investors were promised a high rate of return (higher than the market interest rate for loans). Id. at 747–48.

Here, the defendants offered an investment opportunity ostensibly to raise capital to perform house flipping for profit. The defendants promised a high rate of return to the plaintiffs, which induced them to enter into the contract. The court concludes that the complaint adequately pleads that the investment contracts are securities under Wisconsin law.

Wis. Stat. §551.301 states that it is unlawful for a person to sell or offer a security unless it is registered or exempt from registration. The complaint asserts that the investment contracts were not registered under the state's laws. The Wisconsin Court of Appeals suggests that the defendant bears the burden of proving that the security at issue is subject to an exemption from the registration requirement. See State v. Torgerson, 377 Wis. 2d 728 (Table), 2017 WL 3037549, at *4 (Wis. Ct. App. 2017). Because the defendants have not appeared and have not argued that the investment contracts are exempt, the court will not consider whether any of the statute's exemptions apply. The

allegations in the complaint, taken as true, establish that the defendants sold an unregistered security in violation of Wisconsin law.

The plaintiffs also allege that the defendants made false statements or omissions when offering the investment opportunity to the plaintiffs in violation of Wis. Stat. §551.501. The statute states that it is unlawful for a person "[t]o make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" in connection with the offer or sale of a security. Wis. Stat. §551.501(2). Notably,

> Section 551.501 does not require proof of intent to defraud. *See Dorsch v. Butler (In re Butler)*, No. 17-22141-svk, 2017 WL 5151678, at *7 (Bankr. E.D. Wis. Nov. 6, 2017) (citing *State v. Temby*, 322 N.W.2d 522, 526 (Wis. Ct. App. 1982)). But the defendant "must have known" the falsity of his statements or failed to take reasonable care to discover facts showing the untruths. *See Temby*, 322 N.W.2d at 527.

Toshner v. Goodman, Case No. 18-CV-2005, 2024 WL 473616, at *11 (E.D. Wis. Feb. 7, 2024). The complaint asserts that the defendants made false representations to induce the plaintiffs to invest with him, alleging that Nantomah used the invested money "to fund his personal lifestyle and other ventures." Dkt. No. 1 at ¶14. Because the complaint alleges that Nantomah knowingly made false statements about the investment opportunity, the complaint states a claim for a violation of Wis. Stat. §551.501(2). The court will grant default judgment for the plaintiffs on the fourth and fifth causes of action in the complaint.

13

### F. Federal Securities Act Claims

The plaintiffs assert that the defendants unlawfully sold them unregistered securities and committed securities fraud. Dkt. No. 15 at 13–16. Before liability can attach, the court must determine whether the investment contracts at issue constitute securities under the Securities Act. The Securities Act defines "security" to include an investment contract. S.E.C. v. Edwards, 540 U.S. 389, 393 (2004) (citing 15 U.S.C. §77b(a)(1)). But to determine whether a particular scheme is an investment contract, the court must consider "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." Id. (quoting S.E.C. v. W.J. Howey Co., 328 U.S. 293, 301 (1946)).

Here, the plaintiffs invested money with the defendants and expected to receive profits solely from the defendants' efforts, but the issue is whether they invested money in a "common enterprise." Unlike Wisconsin courts interpreting Wisconsin law, under federal law the Seventh Circuit "has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." Stenger v. R.H. Love Galleries, Inc., 741 F.2d 144, 146 (7th Cir. 1984) (collecting cases); see also Secon Serv. Sys. v. St. Joseph Bank & Trust, 855 F.2d 406, 411 (7th Cir. 1988) (stating that pooling funds from multiple investors is required to find an "investment contract"). In Stenger, the Seventh Circuit found that a plaintiff failed to state a claim under the Securities Act because the complaint lacked

allegations that there was "a pooling of funds or sharing of profits with other investors" or even that there were any other investors. Id. at 147.

The same is true here. The plaintiffs assert that they invested money with the defendants, but do not assert that any other investors contributed funds or were entitled to receive profits. The plaintiffs cannot circumvent this by arguing that as two separate entities, Okeke and Olivdan Properties LLC are separate investors. As discussed above, the contracts at issue are between the corporate parties, not the individuals. Because only the plaintiff invested money and there was no pooling of funds or sharing of profits with other investors, there is no "common enterprise" and the contracts at issue are not securities under the Securities Act. The court will not grant default judgment for the plaintiffs on the sixth and seventh causes of action in the complaint because the well-pleaded allegations in the complaint do not establish liability on these claims.

G. Damages

Having determined that the well-pleaded allegations in the complaint establish that Investors Capital is liable for breach of contract, the court must determine the amount of damages. As stated above, the court can determine damages on a default judgment motion without a hearing if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602.

15

Contract damages are "limited to such damages as are the natural and probable consequences of the breach and were within contemplation of the parties when the contract was made." Peterson v. Cornerstone Prop. Dev., LLC, 294 Wis. 2d 800, 828 (Wis. Ct. App. 2006) (citation omitted). The damages must "flow directly and necessarily from the breach of contract, and must be reasonably foreseeable at the time the contract was made as a probable result of the breach." Reiman Assocs., Inc. v. R/A Adver., Inc., 102 Wis. 2d 305, 321 (Wis. Ct. App. 1981). "An injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform." Thorp Sales Corp. v. Gyuro Grading Co., 111 Wis. 2d 431, 438 (Wis. 1983).

The plaintiffs argue that they are entitled to $212,000 in contract damages, reflecting the $185,000 and $27,000 returns on investments promised by the two investment agreements. But the second investment agreement states that Olivdan Properties is entitled to receive $30,000 return on investment, not $27,000. Dkt. No. 1-4 at 3. Perhaps the $27,000 figure is a typographical error; in any event, the court will rely on the contracts themselves to ascertain the recoverable damages. See Wisconsin Hisp. Scholarship Found., Inc. v. Ramirez, Case No. 09-C-0671, 2010 WL 374955, at *2 (E.D. Wis. Jan. 27, 2010) (relying on documentary evidence of losses incurred rather than summary affidavit when calculating contract damages for a default judgment). Had Investors Capital performed the contracts as promised, Olivdan Properties would have received a total of $215,000 in

16

returns on investment. Those amounts were specifically contemplated in the contracts at the time the parties entered into the agreements. The court is satisfied that the two attached contracts establish that Olivdan Properties sustained $215,000 in damages due to Investors Capital's breach of contract.

In the complaint, the plaintiffs also requested statutory damages and punitive damages, but they appear to have abandoned this claim in their motion for default judgment. See Dkt. No. 14 at 1 (requesting only $212,000 in damages plus costs, interest and attorneys' fees). The court will not grant the plaintiff these additional damages because they did not request them on default judgment. See GS Holistic, LLC v. MKE Vapor, Inc., No. 23-CV-750, 2023 WL 8238953, at *5 n.6 (E.D. Wis. Nov. 28, 2023) (declining to award damages that the plaintiff sought in complaint but not in motion for default judgment); Delta Faucet Co. v. Watkins, No. 23-cv-00200, 2023 WL 8527092, at *3 n.3 (S.D. Ind. Dec. 8, 2023) (same); see also Schaefer v. Universal Scaffolding & Equip., LLC, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Further, granting additional damages for the same wrongful conduct arising out of the investment contracts may constitute an inequitable double recovery. Eldorado Trailer Leasing, LLC v. ReeferTek USA Corp., Case No. 14-C-1199, 2015 WL 13173096, at *1 (E.D. Wis. May 29, 2015) (declining to award damages for both civil theft and deceptive trade practices on default judgment as it would amount to a double recovery for the plaintiff); see also

17

Smith v. RecordQuest, LLC, 989 F.3d 513, 520 (7th Cir. 2021) ("Allowing a double recovery for these intertwined claims may itself be inequitable.").

In their motion, the plaintiffs request interest on their damages. The complaint asserts that the plaintiffs are entitled to interest under Wis. Stat. §551.509(2) for the violations of state securities law. Wis. Stat. §551.509(2)(a) states that the purchaser may recover the consideration paid for the security plus interest at the legal rate under Wis. Stat. §138.04, running from the date of the purchase. The plaintiffs paid $150,000 to the defendants on November 28, 2022, and an additional $20,000 payment on March 9, 2023. The recovery of the plaintiffs' initial consideration is provided for in the contract damages; as stated above, the court will not allow a double recovery of that consideration. But the court will grant interest on the original investments running from the date of the investments at the legal rate of 5%.

The plaintiffs also request costs and attorneys' fees incurred. The plaintiffs are entitled to recover reasonable attorneys' fees for the violation of Wisconsin's civil theft statute as well as the securities statute. See Wis. Stat. §895.446(3)(b) (prevailing party entitled to recover "[a]ll costs of investigation and litigation that were reasonably incurred"); Estate of Miller v. Storey, 378 Wis. 2d 358, 365 (Wis. 2017) (attorneys' fees included in the costs of litigation under this statute); see also Wis. Stat. §551.509(2)(a) (attorneys' fees recoverable for violations of securities law). But the plaintiffs have not provided the court with an amount of the costs and fees they seek to recover, nor any documentary evidence of the costs and fees incurred. The court will order the

plaintiffs to submit a fee petition and supporting documentation by the date set below.

### III. Conclusion

The court **GRANTS IN PART** and **DENIES IN PART** the plaintiff's motion for default judgment. Dkt. No. 14.

The court **GRANTS** the motion as to first through fifth causes of action. The court **DENIES** the motion as to the sixth and seventh causes of action.

The court **ORDERS** that default judgment shall be entered in favor of the plaintiffs and against the defendants in the amount of $215,000, plus interest at the rate of 5% on $150,000 running from November 28, 2022 to the date of judgment and on $20,000 running from March 9, 2023 to the date of judgment.

The court **ORDERS** that by the end of the day on **September 19, 2025**, the plaintiff must submit a fee petition and supporting documentation for costs and reasonable attorneys' fees incurred.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 29th day of August, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**